IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SECURITIES AND EXCHANGE                          CV. 05-1162-PK
COMMISSION,
                      Plaintiff,

                                                 OPINION AND ORDER

v.


PHILIP EVANS and PAUL EVANS,
                      Defendants.

_____

PAPAK, Magistrate Judge:

      Plaintiff Securities and Exchange Commission ("SEC") filed this action alleging insider

trading based on violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §

68j(b), Rule 10b-5, 17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act of 1933, 15

U.S.C. § 77q(a).  The SEC alleges that Phillip Evans received inside information that his

Employer, Merix Corporation ("Merix"), would be releasing a negative announcement regarding

quarterly earnings that would likely cause the price of its stock to fall, sold his own Merix stock,

advised his mother to also sell her stock, and tipped his brother, Paul Evans, about the upcoming

Page 1 - OPINION AND ORDER

announcement.  The SEC further alleges that Paul Evans, based on information from his brother,

then traded in Merix stock prior to the Merix announcement.

Before the court is Defendant Paul Evans's Motion for Summary Judgment (No. 24),

SEC's Motion to Strike Paul Evans's exhibits 1, 2, and 3 (No. 38), and Paul Evans's Motion to

Strike the declaration of Eric Fruits (No. 42).  For the reasons set forth below, all three motions

are denied.

SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary

judgment:

> if the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, the district court's role is not to

weigh the evidence, but merely to determine whether there is a genuine issue for trial.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th

Cir. 1997).

A party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of the record which it

believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986).  Only after the moving party has made such a showing does the

burden shift to the opposing party to show that a genuine issue of fact remains.  See Fed. R. Civ.

P. 56(e).

Page 2 - OPINION AND ORDER

To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial.  See Celotex Corp., 477 U.S. at 322-23; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Harper, 877 F.2d at 731.  The opposing party may not rest on conclusory allegations or mere assertions, see Taylor, 880 F.2d at 1045; Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, see Anderson, 477 U.S. at 249-50; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Taylor, 880 F.2d at 1045.

FACTUAL BACKGROUND

Philip Evans was employed as a financial analyst at Merix, a company that manufactures circuit boards and whose stock is traded on the Nasdaq National Market.  Philip Evans performed financial planning, budgeting and forecasting for Merix's manufacturing operations.

Paul Evans is Philip Evans's brother.  Paul Evans knew his brother was a financial analyst for Merix and was an insider privy to information he was prohibited from sharing with Paul.  Before May 2004, Philip Evans had told his brother that he preferred Paul not trade in Merix stocks.

On May 4, 2004, Philip Evans learned from an email sent to him at work, and subsequently at a meeting with his supervisor in Merix's offices in Oregon, that Merix would be issuing updated guidance the next week and that the company's announcement would be that Merix would not meet its previously forecasted results.  The email Philip Evans received was

marked confidential and warned readers not to discuss the contents with others.

That evening, according to Philip Evans's telephone records, Philip Evans called Paul Evans's home telephone two times: first at 6:08 p.m., and again at 7:04 p.m.  The first call lasted about six minutes, and the second call lasted about nine minutes.  Both Paul Evans and Philip Evans admit that they spoke by phone on or about May 4.  Both brothers deny discussing the upcoming Merix announcement and claim that the conversation was regarding a visit Philip Evans was planning to Paul Evans's home in Mt. Shasta, California.

The next day, on May 5, 2004, both Philip Evans and Paul Evans traded in Merix stock. Philip Evans sold 1,450 shares of Merix common stock, in violation of Merix's insider trading policy.  Paul Evans sold short 14,000 shares of Merix common stock at a cost of $233,940, and purchased 77 put options.[1]  While Paul Evans was an active stock trader, it was the first time he had purchased put options.

Also on May 5, Paul Evans called his friend Paul Westley. The next day, on May 6, Westley purchased Merix put options.

Over the next few days Paul Evans continued to purchase Merix put options and amass a large short position in Merix common stock.  Between May 5 and May 13, Paul Evans purchased a total of 477 Merix put options.  Of those put options, 387 had a May 22, 2004, expiration date and 90 carried a June 19, 2004 expiration date.  In addition, Paul Evans shorted a total of 27,000

---

[1]Short selling is the selling of a security that the seller does not own, or any sale that is completed by the delivery of a security borrowed by the seller. Short sellers assume the risk that they will be able to buy the stock at a more favorable price than the price at which they sold short.  A put option is a contract that gives the buyer of the put the right, but not the obligation, to sell the underlying stock for a stated price. The seller of the put is obligated to buy the underlying stock at the stated price when the buyer exercises his right.

shares worth $445,850.40.

On May 8, at approximately 9:21 a.m., Paul Evans called his brother on his cell phone. At 11:29 a.m. Philip Evans called Paul Evans on his cell phone. Over the next two days, May 10 and May 11, Philip Evans sold short another 4,000 shares of Merix from an account held in another persons name.

Philip Evans has admitted that at some point after he learned that Merix would issue the mid-quarter announcement, he talked to his mother, Carolyn Orcutt, on the telephone, and told her that he would be selling his Merix holdings, and suggesting she do the same.[2] On May 11, 2004, Carolyn Orcutt sold her Merix holdings. In spite of Philip Evans's admission that he suggested she sell her shares, Orcutt denies that she traded in Merix in May 2004 based on conversations with her son.

On May 13, after the close of the market, Merix publicly announced that the company was not going to meet the earnings projections that it had previously announced. Beginning shortly after the May 13 announcement, Paul Evans began to reverse his large short position in Merix securities. After completing those trades, Paul Evans netted approximately $434,320 in profits.

---

[2]Before admitting that he tipped his mother, Philip Evans had testified falsely to the SEC, denying that he told his mother that she should sell her Merix stock.

Page 5 - OPINION AND ORDER

ANALYSIS

Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5

promulgated thereunder prohibit fraud in connection with the offer and sale of securities.

Specifically, Section 10(b) makes it unlawful for any person purchasing or selling securities "to

use or employ, in connection with the purchase or sale of any security. . ., any manipulative or

deceptive device or contravention of such rules as the [SEC] may prescribe as necessary or

appropriate in the public interest or for protection of investors."  15 U.S.C. § 78j(b).  Rule 10b-5,

in turn, makes it unlawful, "in connection with the purchase or sale of any security," "(a) [t]o

employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a

material fact or omit to state a material fact necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any

act, practice, or course of business which operates or would operate as a fraud or deceit upon any

person."  17 C.F.R. § 240.10b-5.  In addition, Section 17(a) of the Securities Act of 1933

("Securities Act") prohibits the same fraudulent conduct in the offer or sale of any security.  15

U.S.C. § 77q(a).

When a corporate insider intentionally sells his company's securities on the basis of

material nonpublic information, the insider violates the above stated antifraud provisions of the

Exchange Act, and Rule 10b-5 and the Securities Act.  United States v. O'Hagan, 521 U.S. 642,

651-52 (1997); Chiarella v. United States, 445 U.S. 222, 228-29 (1980); SEC v. Clark, 915 F.2d

439, 443 (9th Cir. 1990).  Insiders owe a fiduciary duty to disclose or to abstain from trading

when they possess material nonpublic information, so that they do not gain an unfair advantage

over the company's other shareholders.  O'Hagan, 521 U.S. at 652 (citing Chiarella, 445 U.S. at

228-29); In re Cady, Roberts & Co., 40 S.E.C. 907 (1961).

A person to whom an insider discloses material nonpublic information, called a "tippee," has a duty to disclose material information or abstain from trading that is "derivative from that of the insider's duty." Dirks at 662. As the Supreme Court stated, "a tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when then insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has been a breach." Dirks v. SEC, 463 U.S. 646, 660 (1983). Thus, a tippee is liable for insider trading when there is proof of the following elements: (1) the tipper possessed material nonpublic information regarding the issuer of a security; (2) the tipper disclosed the information to the tippee; (3) the tippee traded in the issuer's securities while in possession of the information; (4) the tippee knew or should have known that the information was disclosed in violation of a relationship of trust; and (5) the tipper benefitted by the disclosure to the tippee. Dirks v. SEC, 463 U.S. at 654-64; SEC v. Warde, 151 F.3d 42, 47 (2d Cir. 1998). Each of these elements may be proven by direct or circumstantial evidence. SEC v. Ginsburg, 362 F.3d 1292, 1298 (11th Cir. 2004).

The SEC bears the burden of proof to show that the defendants traded based on knowledge of material nonpublic information. SEC v. Truong, 98 F. Supp. 2d 1086, 1096 (N.D. Cal. 2000) (citation omitted). The standard of proof in a civil case is preponderance of the evidence, and this standard applies even where the SEC bases its case on circumstantial evidence. Id. Courts stress that the SEC may not base insider trading actions on strained inferences and speculations. Id. at 1098 (citation omitted). However, one court explained that the SEC does not have the burden of putting in evidence that compelled an inference that the

Page 7 - OPINION AND ORDER

tipper conveyed nonpublic information to the tippee.  SEC v. Ginsburg, 362 F.3d 1292, 1301 (11th Cir. 2004).  "All [the SEC] was required to do was put in evidence that reasonably permitted that inference."  Id. (explaining that call/trade pattern occurrences coupled with a jury's right to disbelieve the innocent explanations of the calls and trades were sufficient to support a verdict against defendants).  "Insider trading in suspicious amounts or at suspicious times is probative of bad faith and scienter."  In re Apple Computer Sec. Litig., 886 F.2d 1109, 1117 (9th Cir. 1989).

Paul Evans moves for summary judgment on the grounds that the SEC has failed to meet its burden of showing that Paul possessed material nonpublic information from an insider. In other words, Paul Evans argues that the SEC cannot prove that he was tipped by his brother Phillip.  This court disagrees.  The SEC has presented evidence showing that Phillip Evans possessed material non-public information on May 4, 2004.  That evidence coupled with the telephone calls from Philip Evans to Paul Evans, Paul Evans's substantial trading in Merix stock following the May 4 calls, and Paul Evan's phone call to Paul Westley and Paul Westley's trading in Merix stock after that call is sufficient for a reasonable jury to infer that Paul Evans possessed inside information at the time he made the trades at issue here.

Paul Evans argues that the SEC"s evidence is too speculative, and points to two cases: SEC v. Goldinger, 1997 WL 21221 (9th Cir. 1997) and SEC v. Truong, 98 F. Supp. 2d 1086 (N.D. Cal. 2000).  This court is not persuaded that either case supports Paul Evan's position on this motion.

In Goldinger, Thrifty Corporation privately disclosed a proposed merger with Pacific Corporation to several of its major shareholders.  The following morning, one of the

shareholders had a meeting with Goldinger, her broker.  Two hours before the scheduled

meeting, the shareholder called Goldinger and told him she was excited because she learned that

her Thrifty stock was going to be exchanged for gas company stock.  After the phone call,

Goldinger ran into Bert Cohen, the Vice President and head of Goldinger's department, in the

hallway.  Goldinger asked Cohen if 'knew anything" about Thrifty because Goldinger had a

client coming in.  Cohen allegedly said that he did not know anything, but would let Goldinger

know if he heard anything.  In the hours following that conversation between Goldinger and

Cohen, Cohen and three others who worked near Cohen traded in Thrifty securities. Cohen

alleged that Goldinger's comment piqued his interest and he and one of the co-defendants

research Thrifty stock and discovered increased activity over the previous weeks.  The Ninth

Circuit, in an unpublished opinion[3], affirmed the district court's grant of summary judgment in

favor of all defendants, finding that "the SEC had failed to offer sufficient evidence of any direct

disclosure by Goldinger."  Id. At 19. The case does not offer much guidance in terms of why this

evidence was insufficient. SEC argues, and this court agrees, that Goldinger is distinguishable

from the present case because Goldinger involved an attenuated line of circumstantial evidence

of tipping and circumstantial evidence of non-public information.  In other words, pure

speculation.  Here, the SEC is presenting circumstantial evidence of tipping coupled with an

admission by the alleged tipper that he possessed material non-public information.

_____

[3]Pursuant to the Ninth Circuit Court of Appeals Rule 36-3, unpublished opinions may
only be cited in certain situations, none of which are present here.  The court recognizes that the
case should not have been cited and that the unpublished opinion is not binding precedent.
However, because the parties relied extensively on the unpublished case in oral argument, the
court will discuss it's application to the present facts.

In Truong, the SEC presented evidence that Truong, an employee and shareholder of a publicly traded company, sold shares of the company in the weeks prior to the company's announcement that it had failed to meet revenue expectations. Truong involved allegations of insider trading during two time periods: before May 22, 1994, and on or after May 22. With regard to the period before May 22, the SEC offered evidence that prior to Truong's trades, several individuals in the company were provided financial documents revealing decreased revenue figures and company personnel and outside counsel were working on the annual report, which discussed the financial condition of the company, during an evening that Truong was working late. The SEC provided no evidence that Truong saw the confidential reports or overheard discussions while working late. The court granted Truong's motion for summary judgment for the period before May 22, finding that the SEC had failed to articulate the specific non-public information Truong possessed. With regard to the period of May 22 and after, the SEC presented evidence that on May 22 Truong attended a during which the company's financial difficulties were discussed. From that event and Truong's brother's unusually large trading that followed, a jury could infer that Truong passed along inside information. Accordingly, the court denied summary judgment as to trading by Truong's brother after May 22.

Here, the SEC's case against Paul Evans is at least as strong as that against Truong's brother. The SEC has articulated specific non-public information that Phillip Evans, the insider in this case, was privy to, and provided sufficient circumstantial evidence from which a jury could reasonably infer that Paul Evans traded in Merix securities based on information provided by his brother.

Page 10 - OPINION AND ORDER

Paul Evans argues that he has innocent explanations for his and Paul Westley's trades. Specifically Paul Evans claims to have followed Merix closely and to have noticed a pattern of Merix announcing a mid-quarter update to the previously announced financial forecast when Merix's actual earnings varied from their expected earnings.  He also claimed to have written documentation on his plan for shorting Merix stock and buying put options in May 2004, but later conceded that no such documentation of either a pattern or his having traded in accordance with such a pattern ever existed.  Paul Evans claims that in late April 2004 he was in Las Vegas with Paul Westley for the annual World Series of Poker event.  During that trip, Paul Evans claims he told Westley about his Merix trading strategy and that Westley then advised him that to consider buying option contracts rather than selling short.   Paul Evans also claims that Westley then asked Paul Evans to advise Westley when he was going to make trades according to his Merix plan and Westley would do the same.

Even if Paul Evans is able to provide a credible explanation for the trades, where the evidence concerning those trades supports a variety of inferences, including that the trades were a result of inside information, it is for the jury and not the court to determine credibility.  SEC v. Truong, 98 F. Supp. 2d at 1101; see also SEC v. Adler, 137 F.3d 1325, 1340 (11th Cir. 1998) (concluding that fact-intensive issues should be decided by a jury that can observe demeanor of the witnesses and make credibility determinations).  Where investments may have been driven by public knowledge or by insider information, a jury must choose between competing plausible theories of fact.  SEC v. Ginsburg, 362 F.3d 1292, 1301 (11th Cir. 2004).  At the summary judgment stage, where evidence concerning trades could support a variety of reasonable inferences, the court must draw all reasonable inferences in favor of the SEC.  SEC v. Truong, 98

F. Supp. 2d at 1101, citing <u>Anderson</u>, 477 U.S. at 255.

## MOTIONS TO STRIKE

Paul Evans has moved to strike the expert affidavit of Eric Fruits, submitted by the SEC. Because the court did not consider or rely on Mr. Fruits's affidavit, the motion to strike is denied as moot.

The SEC has moved to strike Paul Evans's exhibits 1, 2, and 3. Because the court has denied Paul Evans's Motion for Summary Judgment, the SEC's motion to strike is also denied as moot.

## CONCLUSION

For the foregoing reasons, Paul Evans's Motion for Summary Judgment (No. 24) is DENIED, SEC's Motion to Strike Paul Evans's exhibits 1, 2, and 3 (No. 38) is DENIED as moot, and Paul Evans's Motion to Strike the declaration of Eric Fruits (No. 42) is DENIED as moot.

Dated this 13th day of November, 2006.


＿＿＿/s/ Paul Papak＿＿＿＿＿＿＿＿＿
Honorable Paul Papak
United States Magistrate Judge